UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| THE WOOSTER BRUSH COMPANY, | ) | CASE NO.:  5:06CV474 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **ORDER AND DECISION** |
| | ) | |
| BERCOM INTERNATIONAL, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court on Motion by Defendant Bercom International, LLC ("Bercom") to Partially Dismiss the Amended Complaint filed by Plaintiff The Wooster Brush Company ("Wooster Brush") under Fed. R. Civ. P. 12(b)(1) and (6). Wooster Brush responded in opposition and Bercom replied to that opposition.

The Court has been advised, having reviewed the motion, pleadings and exhibits, and applicable law.  For the reasons stated below, it is determined that Bercom's Motion is GRANTED.  Wooster Brush's Amended Complaint is hereby PARTIALLY DISMISSED.

**FACTS**

The following facts are alleged in the Amended Complaint.  Wooster Brush is an Ohio corporation that manufactures and distributes paint applicators.  Wooster Brush manufactures and sells a particular product sold under the trademark "Pelican."  The Pelican is a hand-held container which has a built-in tray for use with a mini-roller. Bercom is a Minnesota corporation which also manufactures and distributes paint

applicators.  Bercom manufactures and sells a product under the trademark HANDY Paint Pail which has features similar to the Pelican.

On May 27, 2005, Bercom sent Wooster Brush a letter indicating that Bercom "owns several patents covering its developed products, and has numerous pending patent applications[.]"  The letter continued as follows:

> Last week, at the National Hardware Show in Las Vegas, NV, Mr. Bergman [the President of Bercom] was shocked and dismayed to see representatives of your company promoting a paint container under the trade designation "Pelican," which appeared to be a copy of Bercom International's HANDY Paint Pail ® container.

The letter indicated that Wooster Brush's continued development of such a product was "not without significant risk of violating future patent rights of Bercom International."  Bercom also requested confirmation that Wooster Brush would "not proceed with the marketing, sale, or distribution of the 'Pelican'[.]"  Finally, the letter concluded that Bercom would "take whatever steps it deems to be appropriate to protect its intellectual property rights."

On June 15, 2005, Wooster Brush responded to Bercom's letter.  In its response, Wooster Brush indicated that "it is clear that Wooster Brush does not infringe a Bercom patent.  Your letter acknowledges this, for it does not assert that claims of Bercom's issued patent have been infringed."  Wooster Brush then asserted that the concept behind both products was developed by Wooster Brush while it was under a confidentiality agreement with Bercom.  When referencing Bercom's comment that the Pelican was a "copy" of Bercom's product, Wooster Brush stated that "[t]his is clearly not the case."

On November 17, 2005, Bercom sent a second letter to Wooster Brush.  This letter indicated that certain claims had been allowed with respect to Bercom's previously

pending patent application. The letter invited Wooster Brush to consider the claim "in connection with a paint container sold by Wooster Brush under the trade designation 'Pelican.'" The letter ended with Bercom's request that its patent rights be respected.

Wooster Brush responded to the second letter with two additional letters. Those letters contained a detailed analysis in support of Wooster Brush's view that its product did not infringe on Bercom's patent. Those letters concluded as follows: "As noted in my January 17, 2006 letter, we will consider any additional claims that Bercom might obtain, but for now we consider this matter closed."

Wooster Brush then filed the instant suit against Bercom on March 2, 2006. Wooster Brush amended the complaint on April 26, 2006. In the Amended Complaint, Wooster Brush seeks a declaration of non-infringement and a declaration of the invalidity or unenforceability of Bercom's patent. Wooster Brush also raises claims for deceptive trade practices, tortuous interference with business relationships, disparagement, unfair competition, breach of contract, and misappropriation.

On May 5, 2006, Bercom moved to dismiss each count in the Amended Complaint, other than the claims for breach of contract and misappropriation. Specifically, Bercom argues that the Court lacks jurisdiction over the declaratory judgment because there is no actual controversy between the parties. In addition, Bercom asserts that Wooster Brush's claims for deceptive trade practices, tortuous interference, disparagement, and unfair competition must fail because agency was inadequately pled. This Court addresses each of those contentions in turn.

**APPLICABLE LAW**

1. **Motion to Dismiss based on 12(b)(6)**

When reviewing a Rule 12(b)(6) motion to dismiss, this Court "must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of [its] claims that would entitle [it] to relief."  *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)).  If an allegation is capable of more than one inference, this Court must construe it in the plaintiff's favor.  *Id.*  This Court may not grant a Rule 12(b)(6) motion merely because it may not believe the plaintiff's factual allegations.  *Id.*

Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions.  *Id.*  Consequently, "[a] complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship.  It is insufficient to merely plead the legal conclusion of agency."  *Bird v. Delacruz*, 2005 WL 1625303 (S.D.Ohio 2005)(quoting *Gunderson v. ADM Investor Servs., Inc.*, 85 F.Supp.2d 892, 905 (N.D.Iowa 2000).  "While the existence and extent of the agency relationship is a question of fact, the plaintiff must sufficiently allege that an agency relationship existed in order to survive a Rule 12(b)(6) motion to dismiss."  *Id.* (quoting *MJ & Partners Restaurant Ltd. Partnership v. Zadikoff*, 10 F.Supp.2d 922, 931 (N.D.Ill. 1998).

Wooster Brush's Amended Complaint contains one paragraph alleging the factual predicate of its claims premised on agency.  That paragraph reads as follows:

> In about February of 2006, upon information and belief, Wooster Brush learned that an authorized agent of Defendant asserted to a customer of Wooster Brush in this judicial district that a 'cease and desist order' regarding the sale of Wooster Brush's Pelican product was 'in the works' because of alleged infringement of the '829 patent.  Moreover, upon information and belief, throughout the time period beginning in July of

4

> 2005 and continuing through the present time, Wooster Brush has learned of statements asserted by authorized agents of Defendant to customers of Wooster Brush that Wooster Brush was not and/or will not be able to sell the Pelican product due to allegations of infringement by Defendant. Upon information and belief, these assertions by agents of Defendant have prevented certain customers from ordering quantities of the Pelican product from Wooster Brush.

As demonstrated by the above, Wooster Brush's complaint contains no factual allegations in support of its agency theory.

In that respect, this Court finds the opinion in *Bird* helpful.  Concluding that dismissal was appropriate, that Court noted as follows:

> Plaintiffs neglected to plead sufficient facts to establish an agency relationship existed between Carteret and Conestoga as well as between Carteret and Delacruz or Carteret and Atkinson.  For example, Plaintiffs failed to allege that Delacruz or Atkinson were employees of Carteret.  Plaintiffs also neglect to assert … that they had actual or apparent authority to act on [the principal's] behalf.

Similar to the plaintiffs in *Bird*, Wooster Brush failed to allege the identity of the "authorized agent" of Bercom or that agent's relationship with Bercom.  There is no allegation that the "authorized agent" was an employee of Bercom.  While the Federal Rules require only notice pleading, Wooster Brush is obligated to allege facts that, if true, give rise to a cause of action.  Herein, Wooster Brush alleged no facts surrounding its theory of agency.  Taking all of the facts in the complaint as true (but ignoring the legal conclusions), Wooster Brush has failed to state a claim.

Accepting the facts as true, it is established that someone spoke with Wooster Brush's customers regarding infringement.  Without supporting facts, however, there is factual predicate to tie those comments to Bercom through agency.  Consequently, Wooster Brush's claims which depend on a theory of agency must fail.  The claims for

deceptive trade practices, tortuous interference with business relationships, disparagement, and unfair competition are dismissed.

### 2. Motion to Dismiss Based on 12(b)(1)

In 2007, the United States Supreme Court overruled the "reasonable apprehension of suit test" previously used to determine whether an actual controversy existed in matters related to infringement. *MedImmune, Inc. v. Genetech, Inc.*, 127 S.Ct. 764, 774 n.11 (2007); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1339 (Fed.Cir. 2007). As a result, courts have returned to the traditional test for determining whether an actual controversy exists. *Id.* at 1338.

> Under this approach, a declaratory judgment plaintiff must show that under all the circumstances an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. An actual controversy requires only that a dispute be definite and concrete, touching the legal relations of parties having adverse legal interests; and that it be real and substantial and admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts.

*Prasco, LLC v. Medicis Pharm. Corp.*, 2007 WL 1974951 (S.D.Ohio July 3, 2007)(citations and quotations omitted). If … a party has actually been charged with infringement of the patent, there is, *necessarily*, a case or controversy adequate to support jurisdiction of a complaint, or a counterclaim, under the Act. *Cardinal Chemical Co. v. Morton Internat'l, Inc.*, 508 U.S. 83, 96 (1993)(emphasis sic).

Under the totality of the circumstances, this Court finds that no actual controversy exists. Bercom sent letters to Wooster Brush informing it that its patent-pending product was similar to the Pelican. Upon receiving the patent, Bercom sent notice of the allowed claims to Wooster Brush. Wooster Brush then sent a detailed analysis of the claims

6

which supported a finding of non-infringement.  Bercom had no further direct contact with Wooster Brush after this detailed analysis.

The Court in *Prasco* was faced with a similar fact pattern.  In reaching its conclusion that no Article III controversy existed, the Court noted as follows:

> Finally, the Court finds that Medicis' refusal grant a covenant not to sue holds little weight under the circumstances. While Defendants have not conceded non-infringement, Prasco cannot point to any statements by Defendants indicating that Defendants take a position that Prasco's OSCION product infringes the patents-in-suit. ... Here, Prasco has not alleged that Defendants have initiated discussions regarding licensing or made any statements regarding infringement.  Without such facts, the Court cannot find that under all the circumstances, Prasco has shown that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

*Prasco*, 2007 WL 1974951.  Like the party in *Prasco*, Bercom has not entered into a covenant not to sue.  However, also like the party in *Prasco*, Bercom has made no direct statement regarding infringement.  While Bercom indicated that it would take the appropriate legal action to protect its patents, Bercom has never asserted that Wooster Brush has infringed its patent.

Wooster Brush also relies on *Sandisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372 (Fed.Cir. 2007).  However, "[i]n the instant matter, unlike the *SanDisk* case on which defendants rely, there is no evidence [that the patent holder] has made a demand … that identifies how any new product infringes specific claims of any of [the] patents." *Furminator, Inc. v. Ontel Prods. Corp.*, 246 F.R.D. 579, 589 (E.D.Mo. 2007).  "Nor is there any evidence that [the patent holder] has asserted that [plaintiff is] engaged in present, ongoing infringement of … patent, or demanded that [plaintiff] license the patents, as occurred in *SanDisk*." *Id.*  Consequently, *SanDisk* does not aide Wooster Brush's claim that an actual controversy exists.

7

This matter is also distinguishable from *Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.*, 497 F.3d 1271 (Fed.Cir. 2007), in which the Court found that an actual controversy existed.  In *Sony Electronics*, the patent holder

> provided Sony with detailed infringement analyses, which compared, on a limitation-by-limitation basis, a number of the claims of the '158 and '160 patents to specific Sony products. Guardian further alleged that its infringement analyses applied to all other Sony products possessing 'V-chip functionality,' i.e., parental rating control technology, and asserted that it was thus entitled to royalties exceeding $31 million.

*Id.* at 1285.  Unlike the patent holder in *Sony Electronics*, Bercom has never provided an infringement analysis to Wooster Brush.  Moreover, Bercom's first communication with Wooster Brush was sent prior to Bercom having received a patent for its product.  Consequently, Bercom was legally incapable of making an infringement claim at that time.  Rather, the only infringement analysis performed in this matter was conducted by Wooster Brush.  Bercom has never refuted that analysis which found that no infringement was occurring.

In short, Bercom has never identified a claim under its patent that has been infringed.  In addition, the parties have never engaged in any licensing discussions which would support a conclusion that Bercom believes that infringement is occurring.  This Court, therefore, concludes there is not a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Wooster Brush's claims for a declaration of noninfringement and invalidity are dismissed.

**CONCLUSION**

Bercom's motion for partial dismissal of the complaint is GRANTED.  Wooster Brush's declaratory judgment claims are dismissed for lack of subject matter jurisdiction, and its claims for deceptive trade practices, tortuous interference with business

8

9

relationships, disparagement, and unfair competition are dismissed for failure to state a claim upon relief can be granted.

 So ordered.


Date: April 11, 2008              ____/s/ *Judge John R. Adams*_____
                       JUDGE JOHN R. ADAMS
                       UNITED STATES DISTRICT COURT